UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUE MATTIE THOMAS<br>    Plaintiff<br><br>v.<br><br>NATIONSCREDIT FINANCIAL SERVICES<br>CORPORATION, d/b/a EQUICREDIT<br>FAIRBANKS CAPITAL CORPORATION;<br>U.S. BANK NATIONAL ASSOCIATION,<br>    as Trustee<br>    Defendants | Civil Action No. 02-3182 |

**PLAINTIFF'S PRE-TRIAL STATEMENT**

**I.   NATURE OF THE ACTION & JURISDICTION**

1. This is an action by a low-income elderly homeowner seeking to enforce her rescission of a home improvement loan and seeking damages from the lender and its successors in interest. Plaintiff brings the case under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("Consumer Protection Law"), 73 P.S. §201-1 et seq and other state law.

Jurisdiction over the action is conferred upon this Court by the Truth in Lending Act, 15 U.S.C. §1640(e). Supplemental jurisdiction over plaintiff's state law claims is granted by 28 U.S.C. §1367(a). This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2), (A), (B), (C), (K), (L), and (O). (Averred in Paragraph 2 of Complaint; Admitted in Paragraph 2 of Answer.)

**II.   STATEMENT OF FACTS**

1. Plaintiff is Lue Mattie Thomas, a natural person and the residential owner of 126 W. York Street, Philadelphia, PA 19133.

2. Late in 1998 and early in 1999, Plaintiff was interested in having work done on her home because she was worried about water collecting in her basement. She therefore contacted a home improvement contractor and discussed the work she wanted done in her basement.

3. The contractor, without Plaintiff's knowledge, understanding or permission, contacted a loan broker, First Clearfield Fund, to obtain the funds to pay the contractor.

4. First Clearfield contacted EquiCredit.

5. First Clearfield, the contractor and EquiCredit among themselves arranged the terms of the home improvement financing, to pay First Clearfield, to provide fees to EquiCredit and to pay various other fees.

6. Plaintiff did not participate in arranging the financing.

7. The final home improvement contract (hereinafter referred to as "the Home Improvement Contract") was signed by Plaintiff on or about April 27, 1999, at her home.

8. The Home Improvement Contract called for payment of $11,000 to Bob's Home Improvement.

9. EquiCredit set up a loan (hereinafter referred to as "the Loan") not in the amount of $11,000 for the home repairs called for in the Home Improvement Contract but in the amount of $15,000 at an interest rate of 10.75% with fees resulting in an annual percentage rate of at least 13.5237%. The Loan was secured by a mortgage in Plaintiff's home (hereinafter referred to as "the Mortgage).

10. The closing of the Loan took place on or about May 24, 1999 at Plaintiff's home.

11. The fees EquiCredit placed in the loan included the following: $1,350 to First Clearfield Fund; $150 to EquiCredit for loan origination; $350 for appraisal; $270 to EquiCredit for processing; $53 for tax service; $150 for appraisal reinspection; $200 for settlement; three separate courier fees of $35, $35 and $30 respectively; $390 for title insurance; $55 for recording, $10 for recording service.

12. The fees included in the Loan are illegal under state law in a home improvement installment contract. As such, all the fees in the Loan must be considered finance charges under the Truth in Lending Act.

13. The fees which constitute finance charges without reference to state law total at least $2,300.

14. The total finance charge for the Loan exceeds the finance charge disclosed in connection with the Loan by an amount which permits the rescission of the loan under the Truth in Lending Act.

15. The amount financed provided by the Loan is less than the amount financed disclosed by an amount which permits the rescission of the loan under the Truth in Lending Act.

16. Plaintiff did not timely receive the notice required by 15 U.S.C. §1639.

17. Plaintiff, through counsel, rescinded the loan pursuant to the Truth in Lending Act by letter to EquiCredit dated October 19, 2001.

18. EquiCredit received Plaintiff's rescission letter on or about October 22, 2002.

19. EquiCredit did not take the steps set forth by 11 U.S.C. §1635(b) within twenty days of receipt of Plaintiff's rescission letter.

20. Plaintiff did not understand that First Clearfield would be paid as a loan broker out of the proceeds of the Loan.

21. Upon information and belief, subsequent to the Loan origination, EquiCredit transferred ownership interests in the Loan, along with hundreds of other loans pooled together, to U.S. Bank as trustee. EquiCredit also transferred servicing rights in the pool of loans, including Plaintiff's Loan, to Fairbanks. EquiCredit also underwent a change in corporate identity to NationsCredit Financial Services Corporation d/b/a EquiCredit.

22. The work performed under the Home Improvement Contract is worth significantly less than the $11,000 the contractor was paid by EquiCredit.

### III. DAMAGES AND OTHER RELIEF

1. Plaintiff seeks a declaration affirming her rescission of the loan pursuant to the Truth in Lending Act.

2. Plaintiff seeks a determination that the maximum amount she is obligated to pay under the Loan after rescission is the value of the home repairs.

3. Plaintiff seeks statutory damages under the Truth in Lending Act in the amount of $2,000, to be set off against the value of the home repairs.

4. Plaintiff seeks to have all payments made on the Loan credited against the value of the home repairs.

5. Plaintiff seeks a finding of the total amount which she is obligated to repay taking the above into consideration, and a finding that she must repay such amount in monthly installments that are clearly affordable for her should Plaintiff elect to continue to reside at the property.

### IV. WITNESSES

Plaintiff intends to call the following witnesses:

1. Plaintiff Lue Martie Thomas.
2. Expert witness Steven Seweryn regarding the value of the home improvements.
3. A representative of the lender.

### V. EXHIBITS

Plaintiff respectfully refrains from listing exhibits at this time as documents requested in discovery have not yet been provided by Defendants.

### VI. ESTIMATED LENGTH OF TRIAL

One day.

### VII. SPECIAL COMMENTS

Plaintiff, who is over 80 years old, has suffered a serious injury since the commencement of the instant action. It is likely that she will move to a nursing facility in another state. As Plaintiff's primary goal through this action was to save her home, and as it is likely that Plaintiff will not be able to return to her home, Plaintiff believes that the action should be resolved by the sale of the property at fair market value with Plaintiff to retain a small sum (not more than $2,000), the remaining sale proceeds paid to the holder of the Loan, unless there are clouds on the title that can not be resolved by a private sale of the property. Plaintiff's counsel believes that further litigation will be wasteful.

_____
Elizabeth Goodell, Esquire
Community Legal Services
1424 Chestnut Street
Philadelphia, PA 19102
Counsel for Plaintiff

Dated: 2-14-03